IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL BRENNAN, as Guardian Ad
Litem for and on behalf of K.S. and S.S.,
Minors; JONATHAN SPURR and KELLY
JEAN SPURR, Individually and as Next
Friend for and on behalf of Z.S., a minor,

      Plaintiffs,

v.                                                                                                                                                              CIV 14-0006 JAP/KBM

FORD MOTOR COMPANY,
TRW AUTOMOTIVE, and
TRW VEHICLE SAFETY SYSTEMS, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      THIS MATTER comes before the Court on Defendant Ford Motor Company's ("Ford") Motion for Protective Order to Quash Certain Topics in Plaintiffs' Informal Email Request of Topics for a Corporate Representative Deposition (*Doc. 159*) filed on June 24, 2016. Having considered Plaintiffs' Response (*Doc. 164*) and Ford's Reply (*Doc. 165*), the protective motion will be granted in part.

## BACKGROUND

      This product liability, negligence, and breach of warranty case arises from a rollover of a 2004 model year Ford Excursion on January 2, 2011. *See generally Doc. 1-1* at 5-6. Plaintiffs allege that they sustained injuries from rollover accident despite their proper use of lap and shoulder belts. *Id.* On May 19, 2016, Plaintiffs, through counsel, emailed Ford a list of deposition topics to be addressed at a Rule 30(b)(6) deposition of Ford's corporate representative. *Doc. 159-1*. Although Ford does not object to the

1

majority of these topics, the present Motion seeks to quash four of them. *See generally Doc. 159*. These topics include:

- (14) All reports or data submitted by Ford Motor Company to the National Highway Safety and Transportation Administration to (sic) pursuant to the *Transportation Recall Enhancement, Accountability and Documentation Act* that describe complaints, deaths, or claims involving the retractor selected for use in the drivers seating position of the 2001-2004 Excursion;

- (15) All reports or data submitted by Ford Motor Company to the National Highway Safety and Transportation Administration pursuant to the *Transportation Recall Enhancement, Accountability and Documentation Act* that describe complaints, deaths, or claims involving the seat belt buckle selected for use in the outboard seating positions of the 3rd row seat position of the 2001-2004 Excursion.

- (16) Consumer claims, complaints, and lawsuits involving the retractor selected for use in the drivers seating position of the 2001 – 2004 Excursion. The witness should be prepared to discuss (a) when each claim, complaint or lawsuit was received thus placing Ford on notice of the claim; (b) how it was received; (c) the process used within Ford from 2001 to the present for the receipt and processing of such claims; and (d) what facts Ford learned about each event during the course of Ford's investigation; and (e) if Ford contends that one or more incident is not substantially similar to the claims in the subject litigation, the factual basis and reasons that Ford contends supports its position.

- (17) Consumer claims, complaints, and lawsuits involving the seat belt buckle selected for use in the outboard seating positions of the 3rd row sets (sic) in the 2001 – 2004 Excursion. The witness should be prepared to discuss (a) when each claim, complaint or lawsuit was received thus placing Ford on notice of the claim; (b) how it was received; (c) the process used within Ford from 2001 to the present for the receipt and processing of such claims; and (d) what facts Ford learned about each event during the course of Ford's investigation; and (e) if Ford contends that one or more incident is not substantially similar to the claims in the subject litigation, the factual basis and reasons that Ford contends supports its position.

*Doc. 159-1* at 1-2.[1]

---

[1] Although not numbered in the original request, the Court adopts the numbering used by the parties in their briefing for the ease of reference.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure Rule 26(b)(1):

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The Federal Rules of Evidence presume a matter is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. To the extent that discovery is not relevant or proportional, "the court must limit the frequency or extent of discovery otherwise allowed." Fed. R. Civ. P. 26(b)(2)(C)(iii); Fed. R. Civ. P. 26(c)(1)(D). The Court must also limit discovery if it determines that "the discovery is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or "the party seeking discovery has had ample opportunity to obtain information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C)(i)-(ii).

Moreover, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). If the Court determines that a protective order should issue, it may order relief in the form of:

(A) forbidding the disclosure or discovery;
(B) specifying the terms, including time and place or the allocation of expenses, for the disclosure or discovery;
(C) prescribing a discovery method other than the one selected by the party seeking discovery; [or]

    (D)  forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

Fed. R. Civ. P. 26(c)(1)(A)-(D).

## **ANALYSIS**

The discovery topics at issue have one thing in common: they seek information on other complaints and claims involving the components alleged to be defective in this case. The Court finds these topics are generally relevant and proportional to the needs of this case. Evidence of substantially similar accidents is admissible in strict products liability cases "to demonstrate 'notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards.'" *Wheeler v. John Deere Co.*, 862 F.2d 1404, 1407 (10th Cir. 1988) (quoting *Ponder v. Warren Tool Corp.*, 834 F.2d 1553, 1560 (10th Cir.1987)). "Before introducing such evidence, the party seeking its admission must show the circumstances surrounding the other accidents were substantially similar to the accident involved in the present case." *Id.* (citing *Rexrode v. American Laundry Press Co.*, 674 F.2d 826, 829 n.9 (10th Cir.), *cert. denied*, 459 U.S. 862 (1982); *Julander v. Ford Motor Co.*, 488 F.2d 839, 846–47 (10th Cir. 1973)). Ford's argument that Plaintiff should have to demonstrate substantial similarity *before* being permitted to pursue the requested discovery turns the admissibility analysis on its head. *See Doc. 9* at 19.

As Plaintiffs rightly argue, "proof of substantial similarity is an issue of admissibility at trial and not a pre-condition to discovery." Doc. 164 at 4; *see In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1191 (10th Cir. 2009). Plaintiffs cannot establish substantial similarity without discovery into accidents involving the components they claim were defective in this case. Accordingly, Plaintiffs' discovery

4

topics generally are permissible because factually similar complaints or claims involving the components at issue in this case are relevant to their products liability claim. The Court will not permit inquiry into subtopics 16(e) and 17(e), however, as those topics improperly shift the burden in the context of admissibility and compel Ford to reach a legal conclusion as to which accidents are substantially similar.

      The Court declines Ford's invitation to quash topics 14 and 15 on the basis that the information sought is publically available. Ford has not demonstrated that all of the information Plaintiff seeks in regard to its TREAD Act reporting is publically available through the National Highway Traffic Safety Administration ("NHTSA") website. Moreover, Plaintiffs should not be required to blindly search a public database for the information they seek when their deposition topic explicitly seeks testimony regarding "all reports or data" _submitted by Ford_ to the NHTSA. Also, regardless of the records' availability, Plaintiffs are entitled to question Ford's witness as to the information contained in them.

      A similar rationale applies to subtopics 16(a)-(d) and 17(a)-(d), which Ford asserts should be quashed because Plaintiffs are already in possession of documents related to prior claims, complaints or lawsuits involving the subject components. While Plaintiff may be in possession of documentary evidence about prior claims, they are still entitled to question Ford about the contents of those documents. While Ford argues that much of the testimony about the contents of its files would amount to hearsay, Rule 26(b)(1) expressly states that information need not be admissible to be discoverable. Fed. R. Civ. P. 26(b)(1).

Plaintiffs should not be precluded from pursuing the subject topics simply on the basis that they have previously questioned Ford's witnesses about them in other lawsuits. Even accepting its representations as true, Ford has provided the Court with no authority to suggest that simply because an attorney conducts a deposition on a similar issue in one case means they ought to be precluded from pursuing that same questioning in another case.

The Court disagrees with Ford that subtopics 16(c)-(d) or 17(c)-(d) require it to provide a witness to testify as to information within the protection of the attorney/client privilege or work product doctrine. These topics, which inquire as to "(c) the process used within Ford from 2001 to the present for the receipt and processing of such claims; and (d) what facts Ford learned about each event during the course of Ford's investigation" are not specifically aimed at the mental impressions or advice of attorneys. However, to the extent that Ford determines that any particular testimony is privileged during the course of the deposition of its witness, Ford can object and assert the respective privilege, thereafter producing a privilege log for anything it deems objectionable. *See* Fed. R. Civ. P. 26(b)(5).

Turning to Plaintiffs' *duces tecum* requests, contained in Plaintiff's formal deposition notice, the Court is inclined to quash the requests as untimely. A "notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at a deposition." Fed. R. Civ. P. 30(b)(2). A party served with requests for production under Rule 34 has 30 days to respond to such a request. Fed. R. Civ. P. 34(b)(2)(A). "It is well settled that Fed. R. Civ. P. 30(b)(2) provides that any deposition notice which is served on a party deponent and which requests documents to

6

Plaintiffs should not be precluded from pursuing the subject topics simply on the basis that they have previously questioned Ford's witnesses about them in other lawsuits. Even accepting its representations as true, Ford has provided the Court with no authority to suggest that simply because an attorney conducts a deposition on a similar issue in one case means they ought to be precluded from pursuing that same questioning in another case.

The Court disagrees with Ford that subtopics 16(c)-(d) or 17(c)-(d) require it to provide a witness to testify as to information within the protection of the attorney/client privilege or work product doctrine. These topics, which inquire as to "(c) the process used within Ford from 2001 to the present for the receipt and processing of such claims; and (d) what facts Ford learned about each event during the course of Ford's investigation" are not specifically aimed at the mental impressions or advice of attorneys. However, to the extent that Ford determines that any particular testimony is privileged during the course of the deposition of its witness, Ford can object and assert the respective privilege, thereafter producing a privilege log for anything it deems objectionable. *See* Fed. R. Civ. P. 26(b)(5).

Turning to Plaintiffs' *duces tecum* requests, contained in Plaintiff's formal deposition notice, the Court is inclined to quash the requests as untimely. A "notice to a party deponent may be accompanied by a request under Rule 34 to produce documents and tangible things at a deposition." Fed. R. Civ. P. 30(b)(2). A party served with requests for production under Rule 34 has 30 days to respond to such a request. Fed. R. Civ. P. 34(b)(2)(A). "It is well settled that Fed. R. Civ. P. 30(b)(2) provides that any deposition notice which is served on a party deponent and which requests documents to

be produced at the deposition must comply with the thirty-day notice requirement set forth in Fed. R. Civ. P. 34." *Schultz v. Olympic Med. Ctr.*, No. C07-5377 FDB, 2008 WL 3977523, at *2 (W.D. Wash. Aug. 22, 2008). The rationale for this rule is simple, "[a] party may not unilaterally shorten that response period by noticing a deposition and requesting document production at that deposition." *Id.*

Here, Plaintiffs' original informal email made no mention of a *duces tecum* request, and their formal notice of deposition was not served until July 5, 2016, a mere nine days prior to the agreed-upon date for the deposition at issue. With the deposition now looming, the Court is unwilling to subject Ford to the burden of responding to Plaintiffs' untimely *duces tecum* requests. However, Plaintiffs' surreply[2] indicates that Ford does not object to items one and two of the *duces tecum* requests, and Plaintiff has voluntarily withdrawn the third. *Doc. 167-1* at 4-5. Accordingly, it appears that the parties have reached a workable accommodation.

Plaintiffs request their fees and costs associated with responding to the subject Motion. The Court assumes this request is made under Federal Rule of Civil Procedure 37(a)(5)(B). However, that rule prohibits the Court from awarding costs and fees if the motion for a protective order was substantially justified. The Court has determined that Ford's position was substantially justified as to subtopics 16(e) and 17(e) and as to Plaintiffs' untimely *duces tecum* request. As such, the Court will not award fees and costs to Plaintiffs.

Wherefore,

---

[2] Plaintiffs properly filed a motion for leave to file a surreply *(Doc. 167)* which is opposed. The Court has determined that it will permit the filing of the attached surreply and consider it to avoid even more briefing and potentially compromising the deadline for holding the Rule 30(b)(6) deposition, which is set to be held in less than 48 hours – Thursday, July 14, 2016.

**IT IS HEREBY ORDERED** that Plaintiff's motion to file a surreply *(Doc. 167)* is **granted** and that Defendant Ford's Motion for Protective Order (*Doc. 138*) is **granted in part**. Plaintiff's deposition topics are generally relevant and discoverable, with the exception of subtopics 16(e) and 17(e). The Defendant Ford will provide the information as agree in response to the first and second *duces tecum* requests but need not respond to the third request because it has been withdrawn. In all other respects, motion is **denied**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE